Hillsborough, April 5, 1927.

ANNIE MCCARTHY, *Adm'x*, v. HAROLD J. SOUTHER.
SAME v. THE MORRIS COMPANY.

*Tuttle, Wyman & Starr* (*Mr. Wyman* orally), for the plaintiff.

*McLane & Davis* (*Mr. McLane* orally), for the defendants.

ALLEN, J. The denial of the motion for a directed verdict carried the subsidiary ruling that the evidence of the decedent's negligence was not conclusive. This ruling was correct. The evidence tended to show the following facts. The decedent undertook to cross from one sidewalk to the other of a street where there was no crosswalk, a distance of thirty feet, and collided with the car of the defendant Souther on its left side at about the center of the street as it came from the decedent's right. Before starting to cross the decedent had looked to his right when the car was some fifteen rods distant. It was dark but the car's headlights were on. There were no other cars in sight approaching from that direction. At his gait it would take the decedent about ten seconds to cross the street. He gave no attention to traffic after leaving the sidewalk.

Upon approaching the decedent Souther was required to slow down his car and give timely signal. (Laws 1921, *c.* 119, *s.* 11; P. L., *c.* 103, *s.* 13). He was also required to have headlights on his car with light visible at least two hundred feet ahead. Laws 1921, *c.* 119, *s.* 6 (P. L., *c.* 103, *s.* 5). With such standard lights the driver could see ahead not only along, but to each side of, the course the car was taking, so as to give him plenty of time to turn to one side or the other to avoid striking anyone visible in his path, if driving at a reasonable and proper speed. And such a speed would take into account such view ahead as might be had.

When the decedent started to cross the street, he had the right to rely on careful driving towards him. *Quimby* v. *Railroad,* 79 N. H. 529, and cases cited. "In the absence of notice to the contrary, one person is justified in presuming that the other will act in accordance with the rights and duties of both; and this is not negligence or imprudence." *Lyman* v. *Railroad,* 66 N. H. 200, 203. With the limited amount of traffic taken into account it was not necessarily negligent for the decedent, if he first took a view as testified to, to think that he might cross the street safely without giving further attention to traffic. That it looked safe to undertake the crossing in the way he did might be found, and negligence in thus carrying out the undertaking is not conclusively shown. The sufficiency of the evidence to show Souther's negligence is not questioned, and his operation of the car as an effective cause of the collision requires no argument. That the decedent ran into the side of the car, if that is what he did, rather than that the car ran into him is not a decisive circumstance.

If the car should not have been in his path and if he was justified in assuming it would not be, his inattention while crossing the street would not be negligent.

While he was required to use due care in being on the watch, the same as Souther was, their situations were entirely different, and each was to be judged accordingly. Souther's duty to avoid pedestrians required him to use care in watching for their presence and to be ready to meet any careful conduct on their part that might be expected, while the decedent had no duty to be on the watch for cars whose approach or presence was not reasonably to be anticipated. If not required to anticipate the coming or presence of the car, he was not required to look out for it until he learned of the danger of its presence or approach. The testimony that he was not seen until an instant before the collision almost conclusively leads to the conclusion that Souther kept no watch for pedestrians at the time if his car had proper headlights, but that neither of them was on the watch does not prove that both were at fault. Souther might be and the decedent might not.

All the cases in this jurisdiction cited by the defendants in which the injured person's inattention was held conclusively careless are of accidents on railroads or street railways. The fact that an approaching locomotive or car on rails cannot veer from its path as a motor vehicle can makes a material difference in the ability of the engineer or motorman to avoid an accident as compared with the opportunities of the driver of the motor vehicle, and hence in the care required of the person in their path of being on the watch for them. And as is said in *Olson* v. *Railroad*, 82 N. H. 120, 123, "Since each case depends upon its own peculiar circumstances (*Bonnin* v. *Railroad*, supra [77 N. H. 559], 562; *Bass* v. *Railway*, 70 N. H. 170, 172), perfect harmony among the decisions is scarcely to be expected."

The defendants excepted to the admission in discretion of a witness' estimate of the speed of the Souther car as she observed it when the decedent started to cross the street. The witness had had some experience in judging the speed of automobiles, and while it was limited and she was only fifteen years old, her inability to form an opinion of some value was not thereby conclusively disproved. She had occasion to form an opinion in her own personal interest to cross the street herself, and having some ability to observe and judge in such matters, she was reasonably found qualified to give her opinion. And when it is considered that she was the only witness of the accident aside from Souther and his passenger, the further finding involved

in the admission of the evidence that the opinion might be of some help to the jury was also a reasonable one.

The defendants also excepted to the admission of the opinions of two witnesses based on their general knowledge as experts that the car was going with speed at the time of the accident. One expert was an automobile mechanic and he based his opinion on the fact that the impact of the car with the decedent broke the handle of a door which the decedent struck against. At the trial the objection to the evidence was finally stated to be that the jury knew as much as the witness on the subject. If the opinion was the only one fairly to be drawn and was in relation to a matter of common and general knowledge, its admission was of harmless immateriality. If it was otherwise, it was admissible in discretion. *Paquette* v. *Company*, 79 N. H. 288, 290.

The other witness was a surgeon who formed his opinion from the character and extent of the decedent's injuries. Objection to his testimony was made on the ground that it was based on assumptions not included in the questions put to him. A careful study of the record shows that so far as he made such assumptions, his subsequent testimony disclosed them and there was evidence in the case to support them. The exception is overruled.

The exception to the admission of evidence showing the amount of the undertaker's bill is also overruled. Since the statute (P. L., c. 302, s. 12) provides that "expenses occasioned to" the estate of the decedent are an element of damage and since there was evidence that the bill was paid by the estate, the evidence was competent. *Davis* v. *Herbert*, 78 N. H. 179. The suggestion that death not caused by the defendant's fault would have eventually occurred to make necessary the expense does not meet the fact that this death was caused by such fault and that the funeral expense was thereby occasioned. The fact that an event is bound to happen does not relieve one from his statutory responsibility for being the agency producing the happening.

Exception was taken to the refusal to charge specifically that there was no liability if the concurrent negligence of Souther and the decedent caused the collision. The jury were instructed that if the latter's negligence "caused or contributed to the cause of the accident," there could be no recovery. With other references of the charge taken into account it seems clear that men of such intelligence as jurors have would understand from it that the concurrent negligence of the parties barred recovery. The requested instruction was substantially given with sufficient fullness.

The defendants excepted to the refusal to give instructions in substance that negligent inattention on the decedent's part while crossing the street barred recovery and that the fact that he had nothing to control except his own locomotion was a material consideration in passing on his conduct.

For acting on requests for special instructions properly stating the law and applicable to the evidence, the rule has been established that "When the legal principle governing a case is fully stated in general terms, it is not error of law for the court to refuse instructions upon its application to particular evidence. The substance of the requested charge having been given, it is no ground of exception that it was not repeated, or that a particular form of expression was not used." *Walker* v. *Railroad*, 71 N. H. 271, 273. "These requests for instructions being substantially included in the charge, the exception to their denial cannot be sustained. The court was not required to use the specific language employed by the defendants in their requests." *Richmond* v. *Bethlehem*, 79 N. H. 78, 80.

The rule presents difficulties, and its application is not always readily made, for the reason that a full statement in general terms of a legal principle leaves open the question of a rule which is subsidiary and incidental to the general one which is stated. Proper requests for specific instructions which are applicable to the evidence should be granted in some form of language unless the instructions are obviously to be implied from the rest of the charge, and whether general instructions cover them must in some measure be determined by the circumstances and situation of the particular case. "If technically it might be said that the general statement in the charge included the specific application of the law to the evidence in the case as expressed in the request, the question remains, whether it clearly appears that the jury understood the requested instruction was in substance given and they were authorized to return a verdict accordingly. The fairness of a trial requires that the charge shall inform the jury what the law is in its application to the case, when a proper request therefor is made." *Simoneau* v. *Railway*, 78 N. H. 363, 365. See also *Bjork* v. *Company*, 79 N. H. 402, 406. Has the request fairly been given to the jury's probable understanding, is the essential question. It is the court's duty "to fully and correctly instruct the jury as to the law applicable to the case." *Burke* v. *Railroad*, 82 N. H. 350, 361.

An analogous situation arises when the charge although technically correct is apt to confuse or mislead the jury. "The question is what

the language used might mean to jurors." *West* v. *Railroad*, 81 N. H. 522, 532. In such cases a new trial is granted. *Ib.*, 532.

If no request for the specific instructions is made, or if exception is not taken to instructions on the ground that they are misleading, then the failure to give the requested or correcting instruction is not ground for setting the verdict aside. If a party is silent and fails to make his requests or to call the court's attention to errors seasonably to give opportunity for the granting of the requests or for the correction of the errors, he is estopped from subsequently claiming unfairness of the trial. *Matthews* v. *Clough*, 70 N. H. 600; *Nadeau* v. *Sawyer*, 73 N. H. 70; *Janvrin* v. *Powers*, 79 N. H. 44, 47; *Oulette* v. *Company*, 79 N. H. 112, 115, 116; *Saladino* v. *Gurdy*, 80 N. H. 211, 214; *Tuttle* v. *Dodge*, 80 N. H. 304, 316. But this principle, as stated in *Tuttle* v. *Dodge*, *supra*, 316, supplements rather than abrogates the general rule for the allowance of exceptions.

The requests here presented correct propositions of the law of contributory negligence and were particularly applicable to the situation the evidence disclosed. While the court defined negligence generally and stated among other remarks that "everything which would naturally have any influence whatever upon human conduct should be taken into consideration," he did not adopt or incorporate the requests in such a way that it can be fairly said they were brought to the jury's attention.

As bearing on the decedent's care they were material and pertinent. The question whether the decedent's inattention to traffic while crossing the street was negligent or not under the circumstances, of which the fact that he was on foot was an important one, presented the issue of his fault clearly and definitely. The fact of inattention at the time and the contrast between travelers on foot and others were not adverted to in the charge. While the principle governing the issue was stated in general terms, it was not as fully stated as the case required. The instructions should have been given.

The defendant Souther was a traveling salesman for the other defendant whose office was at Manchester. He used his own automobile in covering his district, and was allowed a fixed weekly sum for expenses in running it in addition to his salary. One of his regular trips took him to Jaffrey. After seeing his customers there his time was his own until he reported the next morning at the Manchester office, and he was at liberty to return by any route he pleased. It was while returning from a Jaffrey trip that the fatality occurred.

The plaintiff contends that at the time of the accident Souther was a servant engaged in doing his master's business and acting within the scope of his employment, and that the other defendant as his employer was therefore liable for any negligence in the operation of the car.

There is substantial authority for the proposition that the employer is liable for all torts of his agent or servant committed in the course of the employment, and under such authority the distinction between service in the course of the employment that is, and that is not, under the employer's control and direction is not observed. But the doctrine of *respondeat superior* underlying the employer's liability and through which the liability has been established, is either disregarded or fallaciously applied when the distinction is not made. The doctrine rests on the employer's right of control and direction, and in reason applies only to the extent of the control and direction. What one does by another he does by himself, but what another does is not always the act of the one employing him to do it. Where no control may be implied from the situation and none has been expressly reserved, the mere fact that the relationship is of agency or service should not be enough to subject the employer to liability. And if under the contract of employment the employer has control over part only of the service to be rendered, liability for the manner in which the rest of the service is performed does not thereby follow.

For service not subject to the employer's control and direction in its details, on principle he is no more to be held for its faulty performance than for the liability of an independent contractor. If the employer may not direct how a thing shall be done, then what the agent or servant does is not the employer's act. That he has the right under the contract of employment to have the thing done is not enough to impose liability. That right obtains as well in cases of independent contracts. The further right to direct the manner of performance must appear. "An employer is answerable for the torts of employees whom he is entitled to control with regard to the details of their work, and for the torts of such employees only in so far as they are acting in the course of their duties." Labatt, Master & Servant, 2d *ed.*, s. 2250.

That the service is in the furtherance of the employer's business is not enough. It must be so far his business as to be his own work and undertaking. The engagement of others to do the work does not affect his responsibility. But when the undertaking is that of the person engaged to do it and the employer is only concerned in the re-

sult, the latter's responsibility fails since the undertaking is not his. "His [the employer's] responsibility does not grow so much out of the relation of master and servant as out of the power of direction and control, which are usually incident to that relation." *Hooper* v. *Brawner*, 148 Md. 417, 422.

The principle of control and direction as the test of liability of the employer has been expressed in our own cases. "The maxim, *respondeat superior*, depends on the presumed control implied by the relation between the parties. It therefore does not extend to the case of an independent contractor, to whom the execution of a work is committed without any control or power of direction being reserved on the part of the employer as to the manner of executing the work." *Carter* v. *Mills*, 58 N. H. 52, 53, 54. "The rule is, that where the liability sought to be enforced is based upon the principle of *respondeat superior*, if the person for whose negligence recovery is sought is himself an independent contractor, or the employee of one over whom as to the detail of his work the defendant has no control, liability cannot be enforced by invoking that doctrine. But where the duty sought to be enforced is one imposed by law upon the defendant, he cannot escape liability by showing that he employed another, over whom he had no control, to perform it for him." *Pittsfield &c. Company* v. *Company*, 71 N. H. 522, 530.

The failure to distinguish between undertakings to render a service to another and for doing another's business or work accounts for much of the conflict to be found in the cases in other jurisdictions. The theory of responsibility which the cases here have adopted is regarded as better supported by principle, if not by the weight of authority as well. Much support in other jurisdictions is found, and as of particular pertinence the following cases are cited: *James* v. *Company*, 182 Wis. 36; *Ramp* v. *Osborne*, 115 Ore. 672; *Gall* v. *Company*, 191 Mich. 405; *Aldrich* v. *Company*, 206 Ala. 138; *Barton* v. *Corporation*, 46 Cal. App. 707; *Stamper* v. *Jesse*, 199 Ky 324; *Pyyny* v. *Company*, 253 Mass. 574. The last cited case is closely parallel in its facts with the one at bar.

Whether Souther's relationship with his employer was one of independent contract, or whether he was an agent or servant, or whether his engagement partook of both relations, is therefore not strictly determinative of his employer's liability. The decisive inquiry is whether the employer had any control over Souther in the management and operation of the latter's automobile. If the evidence leaves it doubtful whether control and direction in respect to the details of

the work are reserved, the question is to be resolved as one of fact. *Winslow* v. *Wellington*, 79 N. H. 500. See also *Paro* v. *Company*, 77 N. H. 394, 396.

Upon this issue there is no evidence whatever to show any such control. Souther owned the car and was entitled to its exclusive possession. So far as appears, his contract of employment gave his employer no right of direction for any use of the car by others, and he was to maintain and run it as his personal affair. The allowance made for expenses implied no right and no liability on the employer's part in respect to its maintenance and operation. No authority for the employer to direct Souther how to run the car is to be inferred from the relations between them, and the employer had no more charge or control over Souther's means and manner of transportation than if the travel had been by train. While the employer might assign the routes and times for Souther's trips with the car, it might not direct how the trips should be made or how the car should be managed. The employer, having no right if present to direct Souther in the way he ran and used the car, is not liable for the way it was run and used. How the car was run was its affair only in the sense of its interest in the results obtained from proper operation, and that interest was no evidence of a right to run it or to say in what way it should be run as to the details of operation. A directed verdict for the employer should have been ordered.

*New trial for defendant Souther: judgment for defendant Morris & Co.*

All concurred.